T. Steven Har (TH 2601)
DUANE MORRIS LLP
1540 Broadway
New York, New York 10036-4086
Tel: (212) 692-1000
Fax: (212) 692-1020


UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF NEW YORK
-----------------------------------------------------X
JOHN PIERRO,                                  :
                                              :
                    Plaintiff,                :        **08-CV-0063 (RJD) (JMA)**
                                              :             **ECF CASE**
        -against-                             :
                                              :
                                              :           .
DAEWOO MOTOR AMERICA, INC.,                   :
DAEWOO MOTOR AMERICA, DAEWOO:
MOTOR, DAEWOO, GM DAEWOO                      :
AUTO & TECHNOLOGY CO., GENERAL:
MOTORS CORP., JOHN DOES #1-5, AND:
XYZ CORPORATIONS #1-5                         :
                                              :
                    Defendant.                :
-----------------------------------------------------X


## DAEWOO MOTOR AMERICA'S RESPONSE TO DAEWOO MOTOR CO. LTD'S STATEMENT OF UNDISPUTED MATERIAL FACTS

Defendant and Cross-Claimant, Daewoo Motor America, Inc. n/k/a Starpoint USA, Inc.

("DMA"), by and through its Attorneys, Duane Morris LLP, pursuant to Rule 56 of the Federal

Rules of Civil Procedure and Local Rule 56.1, submits its response to Daewoo Motor Co. Ltd.'s

("DWMC") Statement of Undisputed Material Facts.


11.      On or about December 4, 2007, John Pierro filed the underlying action, alleging cause of

action for negligence and products liability claims against various defendants, including DWMC

and Daewoo Motor America, Inc. ("DMA").

Disputed to the extent DWMC is implying that negligence is not a cause of action for product liability.  Negligence is one of four causes of action in product liability in New York.

12.     On or about February 29, 2008, DMA answered the complaint.  In its answer, DMA admits that it is organized under the laws of the State of Delaware, with its principal place of business is in California, and that it conducts business in New York.

Not disputed.

13.     On or about August 22, 2008, DWMC answer plaintiff's complaint.

Not disputed.

14.     Thereafter, on or about October 7, 2008, DMA filed a cross-claim against DWMC alleging causes of action for contractual indemnity, common law indemnity, contribution, breach of written contract, breach of oral contract, declaratory judgment, declaratory judgment: future lawsuits, specific performance and injunctive relief.  DMA bases its claims for contractual indemnity on two letters, dated April 11, 2000 and April 18, 2001, in which DMA "requested that DWMC confirm that it had agreed to reimburse DMA for certain expenses associated with the Distribution Agreement."  DMA did not attach the two letters to its Cross-Claim.

Disputed to the extent the claim is not based on the distribution agreement but on the Indemnity Agreement.  DMA's Cross-Complaint against DWMC (Exhibit "A" Har Decl.)

15.     DMA did not attach the November 18, 1999 Automobile Purchase and Distribution Agreement ("Distribution Agreement") between DMA and DWMC to the Cross-Claim.  Under the terms of the Distribution Agreement, DMA agreed to purchase vehicles and parts

manufactured by DWMC.  The Distribution Agreement contains <u>no</u> express terms or provisions regarding the availability of <u>any type</u> of attorneys' fees or costs.

Not disputed, but this statement is neither material fact nor relevant to this action.

16.     Neither of the April 11, 2000 nor the April 18, 2001 letters contain an express attorneys' fees provision for the enforcement of the purported indemnity obligation.

Disputed.  The Indemnity Agreement specifically provides for all legal fees relating to all legal proceedings involving Daewoo vehicles. (Hong Decl. Exhs "B" and "D"); The jury in Bandy case in California found that the Indemnity Agreement specifically provided for reimbursement of all legal expenses for enforcement of the agreement. (Har Reply Decl. Exh "A")

17.     In this, as well as in other cross-claims against DWMC, DMA has continuously advocated that the Audit Letters arise from the Distribution Agreement.

Disputed.  From the planning stage and through the incorporation and throughout their parent/subsidiary relationship, there was an agreement between DWMC and DMA that DWMC as the manufacturer of Daewoo automobiles would indemnify and hold harmless DMA, including attorneys fees and expenses, for any legal proceedings involving Daewoo automobiles distributed by DMA.  Both DWMC and DMA understood that DMA would not have to incur any expenses from any legal proceedings involving Daewoo automobiles and that DWMC would reimburse DMA for all such expenses. (Hong Decl. ¶4)

## California State Indemnity Case Filed by DMA

18.     On or about October 8, 2003, Michelle Bandy filed a complaint alleging product liability claims against, inter alia, Daewoo Motor Co., Ltd. and Daewoo Motor America, Inc. for injuries plaintiff allegedly sustained in an accident that occurred on October 10, 2002 while plaintiff operated a Daewoo vehicle (hereinafter the "Bandy matter").  In the Bandy matter, DWMC and DMA were sued as the vehicle manufacturer and distributor, respectively.

Not disputed.

19.     On June 18, 2005, DWMC settled the underlying Bandy action on behalf of itself and all parties in the product's chain of distribution, including DMA, and on July 14, 2005, Plaintiff filed a dismissal, with prejudice, as to all defendants.

Not disputed to the extent that the underlying Bandy action was settled.

20.     The April 11, 2000 and April 18, 2001 letters were drafted by DMA's auditors for the sole purpose of removing product liability expenses from DMA's financial statements in order to avoid DMA having to accumulate a reserve in its accounting system.

Disputed.  The purpose for the letter Indemnity Agreement also included the confirmation of the parties' understanding as to the DWMC's obligation to indemnify DMA for all product liability expenses, including legal expenses for defending the underlying product liability lawsuit and for enforcing the agreement. (Hong Decl. ¶¶8,10).

21.     Mr. Hong did not discuss the purpose or the contents of such letters with anyone at DWMC and merely informed DWMC that such a letter was coming and requested that it be signed.

Disputed.  From the planning stage and through the incorporation and throughout their parent/subsidiary relationship parties continued to have discussions and understanding that DWMC would indemnify and reimburse all legal expenses incurred by DMA for both defending the underlying action and for enforcing the agreement.  (Hong Decl. ¶¶4-6, 8, 10) (Hong Depo. 58, 2-8) (Hong trial testimony in Bandy to be provided.)

22.     DWMC did not communicate with anyone at DMA regarding the contents of the two letters and merely signed them at DMA's request.

Disputed.  From the planning stage and through the incorporation and throughout their parent/subsidiary relationship parties continued to have discussions and understanding that DWMC would indemnify and reimburse all legal expenses incurred by DMA for both defending the underlying action and for enforcing the agreement.  (Hong Decl. ¶¶4-6, 8, 10) (Hong Depo. 58, 2-8) (Hong trial testimony in Bandy).

23.     The letters were drafted at DMA's offices in California, sent to DWMC in Korea, with the request that they be sent/faxed back to DMA's auditors in Los Angeles, California.

Not disputed.

24.     On October 20, 2008, DMA [Starpoint] filed its Third Amended Cross-Complaint.

Not disputed.

25.     On November 12, 2009, DWMC's Motion for Summary Adjudication came on for hearing.  The court, having considered the papers and hearing oral arguments, granted DWMC's motion, and, among other things dismissed DMA's causes of action for Declaratory Relief for

Indemnity of Future Lawsuits.  The court's ruling found, among other things, as a matter of law, that DMA's cause of action for declaratory judgment as to future lawsuits was not ripe for determination in that (1) there was no justiciable issue; (2) claims for future damages are speculative; and (3) there was no immediate hardship relating to future product liability lawsuits.

Disputed to the extent that the cause of action was dismissed on a procedural grounds that the expert report was not submitted.  Further, the court stated that the same relief could be obtained through DMA's cause of action for declaratory relief cause of action.

26.     The <u>Bandy</u> matter is scheduled to commence trial on June 22, 2010.

Not disputed.  The Bandy trial was concluded on July 8, 2010.  The jury returned a verdict in favor of DMA on all issues, including the finding that DMA is entitled to collect all legal expenses under the Indemnity Agreement, for both defending the underlying case and for enforcing the agreement. (Har Reply Decl. ¶4, Exh "A").

### DMA's Bankruptcy Matter in the Central District of California

27.     On May 16, 2002, before the events giving rise to this case occurred, DMA filed Chapter 11 bankruptcy in the United States Bankruptcy Court, Central District of California, Case No. 02-24411 (adversary Case No. 03-02155-BB) ("Bankruptcy Matter").

Not disputed.

28.     On November 18, 2002, DWMC filed a proof of claims in the DMA bankruptcy for approximately $158 million in unpaid invoices for vehicles and parts shipped DWMC to DMA pursuant to the Distribution Agreements between DWMC and DMA.

Disputed.  Mischaracterization of the case.  This is a lawyer's argument without any supporting

evidence, in violation of Local Rule 56.1.

29.    After several amendments, on November 14, 2007, DMA filed its Third Amended

Objection to Proof of Claim and Counterclaims ("Third Amended Counterclaim") as to

DWMC's proof of claim.  DMA's Third Amended Counterclaim asserts counterclaims for (1)

declaratory relief re-characterizing DMA's debt to DWMC as equity . . . and (3) breach of

contract, i.e., the November 18, 1999 Distribution Agreement.  DMA's claims are based on the

same Distribution Agreement and Audit Letters at issue in this matter.

Disputed.  DMA's claims are based on the distribution agreement only.  There is no mention of

the "Audit Letters" in the claim. (Schmadeka Decl., ¶ 22, Ex. "AA" [DMA's Third Amended

Objection to Proof of Claim and Counterclaims).  Further, the Joint Pretrial Order, lists the issues

of fact and law to be tried. The Joint Pretrial Order also mentions that "Pursuant to Local

Bankruptcy Rule 7016-1(b)(2)(C) [only the issues of fact and law listed] and no others, remain to

be litigated."  There is no mention of product liability indemnity issues. (Har Reply Decl. Exh

"E").

30.    On March 23, 2010, trial commenced in DMA's Bankruptcy matter.  DMA claimed the

DWMC breached the Distribution Agreement and two Audit Letters because DWMC failed to

reimburse DMA for warranty and free maintenance expenses, totaling approximately $45

million.  DMA asserted that it is entitled to reimbursement for the warranty expenses and free

maintenance expenses.  DMA apparently did not proceed at trial with its claims for product

liability indemnity.  DWMC asserted that it did not breach the agreement because, pursuant to its

approximate $158 million proof of claim, it intended to pay DMA for any outstanding amounts owed through recoupment of the amounts DMA owed DWMC.

Disputed.  Mischaracterization of the case.  This is a lawyer's argument without any supporting evidence, in violation of Local Rule 56.1.   DMA's claim is solely base on the distribution agreement.

31.     Among other things, DMA asserted that the two Audit Letters are evidence that the debt (i.e., the unpaid invoices for vehicles and parts purchased) to DWMC should be re-characterized as equity because, inter alia, DMA was dependent on DWMC for a variety of financial support, including, coverage for product liability claims, i.e.,  DWMC agreed to reimburse DMA for all products liability expenses, and to hold DMA harmless from any claim, demand or legal proceeding involving allegations of breach of any warranty related to DWMC products.

Disputed.  This is a lawyer's argument without any supporting evidence, in violation of Local Rule 56.1.  Product liability indemnity was not an issue in the bankruptcy case.  There were several Audit Letters introduced at trial.  Only those relating to the warranty and maintenance costs were at issue.  The products liability indemnity was not at issue.

32.     On May 6, 2010, the bankruptcy court ruled that DMA's re-characterization claim fails as a matter of law.  The court also ruled the DWMC is entitled to recoup the amounts owed for warranty and free maintenance payments for the $158 million debt DMA owed to DWMC.

Disputed, as not being complete.  The Court also found that DMA was entitled to recover warranty and maintenance expenses.  The ruling did not address any product liability indemnity issues.

33.     On May 18, 2010, the bankruptcy court reconvened.  During the hearing, the court held that, even if DWMC had an obligation to reimburse DMA for warranty and free maintenance expenses, DMA's prior breach of the Distribution Agreement – that it did not perform – excused DWMC's performance under that agreement.

Disputed.  The bankruptcy court ruled that DMA was entitled to warranty and free maintenance expenses, for which DWMC could recoup.

34.     DWMC will submit its proposed statement of findings and prepared judgment on June 21, 2010.  The court, after any objection by DMA and resolution thereof, will enter final judgment.

Not disputed.

### Lack of Evidence of Future Litigation

35.     Currently, there is only one other product liability lawsuit that is without a settlement and is currently being pursued by a plaintiff: Manual Bernal, et al. v. Daewoo Motor America, et al. United States District court, District of Arizona, Case No. 2:09-cv-01502 (DGC), filed on July 29, 2009.

Not disputed.

36.     DMA has not received any notice of correspondence from any potential plaintiff from 2005 to 2009 about any future liability suit.

Disputed.  Bernal complaint.

37.     DMA does not have an "early warning" system designed to bring to DMA's attention any incident that may lead to a product liability suit.

Disputed to the extent the "early warning system" is not defined.

38.     In 2003, in connection with its gaining approval of its modified reorganization plan before the United States Bankruptcy Court, Central District of California, Case No. LA 02-24411-BB, Starpoint's expert, Patrick Kennedy, calculated that the future product liability claims arising after 2007 would be less than one claim per year.

Disputed to the extend the report is out dated.

39.     DMA does not have any analysis that contradicts the numbers provided by Dr. Kennedy in 2003.

Disputed.  DMA will provide updated analysis when DMA's cause of action for declaratory relief for future product liability claim becomes ripe for adjudication.


Dated:
        July 15, 2010
        New York, New York.


                                        Duane Morris LLP

                                        By:  ___/s/ T. Steven Har_____
                                        T. Steven Har (TH 2601)
                                        1540 Broadway
                                        New York, New York 10036-4086
                                        (212) 692-1000
                                        tshar@duanemorris.com
                                        Attorneys for Defendant
                                        Daewoo Motor America, Inc.